ACRADYNE INC., an Oregon corporation; Automotive Industrial Marketing Company, an Oregon corporation, Plaintiffs–Appellants,

v.

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, a Delaware corporation, Defendant–Appellee.

No. 05–35903.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2007.

Filed Jan. 10, 2008.

Thomas W. Brown, Esq., Cosgrave Vergeer Kester, LLP, Portland, OR, for Plaintiffs–Appellants.

G. Kevin Kiely, Esq., G. Frank Hammond, Cable Huston Benedict & Haagensen, Portland, OR, for Defendant–Appellee.

* The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

Before: FISHER and BERZON, Circuit Judges, and BARZILAY,* Judge.

## MEMORANDUM **

AcraDyne and AIMCO ("the Corporations") appeal the district court's order granting Travelers Casualty & Surety Company of America ("Travelers") summary judgment on the Corporations' duty to indemnify claim. The district court held that Travelers had no duty to indemnify the Corporations for amounts paid to settle a lawsuit brought by its former employee, Mark Lehnert, because Lehnert's lawsuit was not covered under the employment practices insurance policy ("the Policy").

### 1. Lehnert's Continuation Pay

Lehnert's contract entitled him to be paid for six years so long as he was not terminated for cause within that time period. Because AcraDyne terminated Lehnert without cause prior to the completion of his six-year contract, AcraDyne was required to continue to pay Lehnert his salary for the remainder of the contractual period.

The Policy specifically excluded from its definition of damages "[s]everance pay or penalties under an employment contract, or any agreement, policy or procedure providing for payment in the event of separation from employment . . . ." Linguistically, "damages" cannot be "any agreement, policy or procedure." So the sentence must refer to "severance pay" due under one of

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

two kinds of schemes—"employment contract[s]" and "agreement[s], polic[ies] or procedure[s] providing for payment in the event of separation from employment."

■ The damages owed to Lehnert are not "severance pay" under the plain meaning of that term. Continued payment of the salary under Lehnert's contract did not depend on severance. The same amount was to be paid whether Lehnert was severed or worked, so long as any discharge was not for cause. In contrast, "severance pay" is triggered only by cessation of employment, and is ordinarily calibrated to the length of employment. *See Crofoot v. Columbia–Willamette Air Pollution Auth.*, 31 Or.App. 903, 571 P.2d 1266, 1268 (1977). For this reason, Oregon courts typically view severance pay as a type of compensation earned while employed, although not paid until afterwards. *See Wilson v. Smurfit Newsprint Corp.*, 197 Or.App. 648, 107 P.3d 61, 68 (2005). In contrast, Lehnert's post-employment salary continuation is inversely related to his period of employment: The shorter his period of employment, the more he was to be paid post-employment. Such a scheme can hardly be viewed as additional compensation for work actually performed.

Furthermore, assuming that the phrase "payment in the event of separation from employment" is relevant to illuminate the meaning of "severance pay," it is ambiguous, at best, whether Lehnert's continuation of salary provision concerns a "payment in the event of separation from employment." The contractual provision in question could more fairly be characterized as one providing for continued payment of salary *despite* separation from employment.

Because the Policy is subject to two plausible interpretations even when the broader context is considered, the Policy must be construed against the insurer.

*See Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*, 313 Or. 464, 836 P.2d 703, 706–07 (1992); *Shadbolt v. Farmers Ins. Exch.*, 275 Or. 407, 551 P.2d 478, 480 (1976). As a result, Lehnert's damages are not excluded from coverage under the Policy as "severance pay" and Travelers had a duty to indemnify the Corporations for those damages. Summary judgment for Travelers on this issue was improper.

## 2. Lehnert's Compensation Reduction

■ Lehnert alleged that his salary was reduced in violation of his Employment Agreement. The Policy specifically excluded from damages "sums sought solely on the basis of a claim for unpaid services under an express or implied agreement." We conclude that the claim for salary reduction was not a claim for "unpaid services."

Where an employee continues to do the same amount of work for the same amount of time but is paid less per week or per month than before, the ordinary understanding is that he or she is being paid less per unit of work, not the same salary for some work and no salary at all for the rest. The alternative interpretation—that some of the work is for free—would require a calculation prorating the original salary, to cover some services or some time period. There is no suggestion here that such a calculation was ever done, nor any other basis in the record to suppose that some services were left "unpaid," and if so, which ones.

At the very least, the term "unpaid services" is ambiguous, and should be construed against the insurer. *See Hoffman Constr. Co. of Alaska*, 836 P.2d at 706–07; *Shadbolt*, 551 P.2d at 480. As a result, Travelers had a duty to indemnify the Corporations for the damages resulting from the reduction in Lehnert's salary.

Lehnert also alleged that the Corporations breached the Employment Agreement by denying him certain stock option benefits. The Agreement did not specify how Lehnert could exercise his stock options, or how the stock would be valued, but it did provide for a stock options program as a central feature of Lehnert's compensation. As "every contract contains an implied duty of good faith," *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 891 P.2d 639, 643 (1995) (en banc), the Agreement included at least as an implied term the promise that Lehnert would actually be permitted to exercise the stock options, whatever they turned out to be, and that the stock would not be intentionally rendered valueless by the Corporations.

Travelers argues that even if that interpretation is valid, the damages are excluded as "a claim for unpaid services." That argument fails for the reasons already given with regard to salary reduction.

In sum, Travelers had a duty to indemnify the Corporations for any damages resulting from a breach of the implied covenant of good faith and fair dealing as applied to the promise of stock options. Summary judgment for Travelers on this issue was improper.

### 3. Lehnert's Misrepresentation Claims

Lehnert alleged that the Corporations made materially false and misleading statements during his recruitment to induce him to enter into the Employment Agreement. That the misrepresentations occurred prior to Lehnert's actual employment at AcraDyne does not exclude the claims from coverage. Under the Policy, "Wrongful Employment Practice[s]" are defined to cover acts that occur as part of an "employment application." The misrepresentations alleged by Lehnert arose out of AcraDyne's consideration of Lehnert for the position of AcraDyne's President, and so is covered by the Policy.

Nonetheless, the district court correctly concluded that Travelers had no duty to indemnify AcraDyne for Lehnert's intentional misrepresentation claim. The Policy excludes from coverage any claim "arising out of facts, transactions or events which are or reasonably would be regarded as Wrongful Employment Practices, about which any Responsible Person had knowledge prior to the inception of coverage under the Policy...." Lehnert's intentional misrepresentation claim was excluded from coverage under this provision. AcraDyne would have been aware of any intentional misrepresentation when it occurred, which was before the issuance of the Policy.

Lehnert's negligent misrepresentation claim, however, would not be excluded as a known loss. The Corporations might not have been aware of any purely negligent misrepresentations. Summary judgment for Travelers on the negligent misrepresentation claim was therefore improper.[1]

### 4. Lehnert's Unjust Enrichment Claim

Lehnert's unjust enrichment claim is not covered under the Policy. Unjust enrichment is not one of the eighteen practices included in the Policy's definition of a "Wrongful Employment Practice." Nor does this particular allegation of unjust enrichment fall within any of the covered practices. It was not a wrongful termi-

---

1. It is not clear that one can negligently, as opposed to intentionally, make a misrepresentation regarding a promise regarding future behavior. On remand, the district court should consider whether Oregon law would recognize such a cause of action for negligent misrepresentation.

nation, because the termination of Lehnert was explicitly contemplated in the Agreement and was not wrongful; only the failure to continue to pay Lehnert under the terms of the Agreement was allegedly wrongful. Insofar as Lehnert's unjust enrichment claim was simply an alternative theory for recovery based on a breach of contract, it is duplicative, because Travelers is already liable for indemnification for Lehnert's breach of contract claim, as discussed above. Summary judgment for Travelers on Lehnert's unjust enrichment claim was proper.

\* \* \*

Because Travelers has a duty to indemnify the Corporations for most, but not all, of Lehnert's claims, as discussed above, we reverse the grant of summary judgment to Travelers, and remand the case to the district court. On remand, the district court shall determine, inter alia, how the total settlement amount of $310,000 should be allocated, including whether the larger settlement rule is applicable in determining the appropriate allocation between Travelers and the Corporations.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED.** The parties shall bear their own costs on appeal.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.